PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion of the Supreme Court.

`For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, WHITE, HEPPENHEIMER, GARDNER, ACKERSON, VAN BUSKIRK, JJ.    11.

*For reversal*—None.

---

BERGEN COUNTY RAILROAD COMPANY, APPELLANT, v. THE STATE BOARD OF TAXES AND ASSESSMENT AND NEWTON A. K. BUGBEE, COMPTROLLER OF THE TREASURY, RESPONDENTS.

Argued March 9, 1923—Decided May 4, 1923.

On appeal from the Supreme Court, in which the following *per curiam* was filed:

"The writ of *certiorari* in this case brings before us for review the assessment of taxes payable to the State of New Jersey by the prosecutor in the year 1921 for railroad purposes. The prosecutor is a railroad corporation. Numerous other writs at the instance of other railroad corporations have been allowed, but these cases are, by stipulation, to await the final determination of the present case. The question involved is the legality of the procedure of the state board of taxes and assessments (hereinafter called the state board) under chapter 138 of the laws of 1921. *Pamph. L.* 1921, *p.* 365. The taxes in question were levied under the General Railroad Tax act of 1884, and the amendments thereof and supplements thereto. The chronology of the procedure prior to the enactment of chapter 138 of the laws of 1921 was as follows:

" 'March 1st, railroad companies reported to the state board of taxes and assessment, their property as it existed on January 1st, preceding, and the state board certified the value of second-class railroad property to county boards of taxation and to assessors of taxing districts to be included in ratables of taxing districts. *Pamph. L.* 1918, *p.* 1079, §§ 2, 3.

" 'April 1st, county boards of taxation certified local rates of taxation to the state board of taxes and assessment. *Pamph. L.* 1918, *p.* 1079, § 3.

" 'First Monday of July. The state board of taxes and assessment met at Trenton for the purpose of hearing interested parties. *Pamph. L.* 1918, *p.* 1080, § 5.

" 'November 10th. The state board of taxes and assessment served a statement of valuation and taxes on the railroad companies. *Pamph. L.* 1918, *p.* 1080, § 5.

" 'Third Monday of November. The state board of taxes and assessment met at Trenton for the purpose of reviewing assessments on complaints in writing of the railroad companies or of the attorney general or any member of the state board on behalf of the state. *Comp. Stat., p.* 5270, *pl.* 456; *Pamph. L.* 1918, *p.* 1080, § 6.

" 'February 15th. The state board of taxes and assessment completed its review of assessments. *Pamph. L.* 1918, *p.* 1080, § 7.

" 'March 1st. The state board of taxes and assessment certified a statement of assessed valuation and taxes to the comptroller of the treasury for collection. *Pamph. L.* 1918, *p.* 1081, § 8.

" 'April 15th to December 1st. Taxes payable.'

"Under the General Tax act of 1918, the county boards of taxation are required to determine the rates of taxation in the taxing districts on or before March 10th in each year, and to return the tax duplicates showing such rates to the collectors of the taxing districts on or before April 1st, following. *Pamph. L.* 1918, *pp.* 867-868, §§ 508-509.

"The scheme of the General Railroad Tax act worked out that railroad taxes payable in one year were based upon the

rates of taxation in the taxing districts for the preceding year, because the rates for the year in which railroad taxes were payable were not certified to the state board until after it was compelled to make its valuations, compute the taxes, complete its review of assessments and certify the taxes to the comptroller of the treasury for collection.

"The state board of taxes and assessment completed its valuation of prosecutor's property for assessment for taxes payable by prosecutor in the year 1921, and computed such taxes before November 1st, 1920, the taxes being based upon the rates of taxation in the taxing districts for the year 1920. A statement of such valuation and taxes was served on prosecutor on November 5th, 1920. Prosecutor complained in writing to the state board against the same on November 15th, 1920, which was the third Monday of November, and they were reviewed by that board. The state board completed its review before February 15th, 1921, and certified its final determination of the taxes to the comptroller of the treasury for collection on February 19th, 1921. Thereafter, by an act approved on April 2d, 1921, the provisions that the state board should compute the taxes on railroad property not later than November 1st of each year and serve statements thereof on the railroad companies within ten days from that date, were eliminated, and the time before which the board was required to certify such taxes to the comptroller of the treasury was changed to June 1st following the completion of its review, although the requirements that the board should complete its valuation of railroad property before November 1st of each year and serve statements thereof on the railroad companies, as well as for review thereof by the board, remain unchanged. The 1921 act also provided as follows:

" 'The state board of taxes and assessment shall have power on or before June 1st, nineteen hundred and twenty-one, to amend its report of the assessment of taxes on railroad and canal property to comply with the provisions of this act for the year nineteen hundred and twenty-one, which

may have heretofore been certified to the comptroller, or certify a new report.'

"Tax rates are not mentioned in the act, but the state board of taxes and assessment construed it to mean that the taxes on prosecutor's property, payable in the year 1921, which had been theretofore assessed by them according to the tax rates in the various taxing districts for the year 1920, were to be reassessed according to such tax rates for the year 1921, and proceeded accordingly. The state board reassessed the taxes and again certified them to the comptroller of the treasury on May 19th, 1921.

"The average rate of taxation for the year 1920 was $3.264 per $100 valuation. For the year 1921, it was $3.440. The result of the application of the 1921 average rate of taxation to the 1921 assessments was to raise the prosecutor's taxes for the year 1921. The act of 1921 contains no provision for notice to the railroad companies of the making of the reassessment nor for an opportunity for them to be heard thereon and none was given to the prosecutor. By this procedure, the prosecutor contends that it is deprived of its property without due process of law and in violation of the fourteenth amendment to the constitution of the United States.

"Whether this contention is sound or not depends, we think, upon whether the act of the state board in making the so-called amended assessment, was judicial or ministerial. If judicial, it was illegal, as the prosecutor would be entitled to notice and hearing upon any act done by the state board which was judicial in its character. If ministerial, no notice or hearing was required to be given the prosecutor. This distinction has been universally recognized. It was pointed out in the case of municipal ordinances by Justice Depue, in the case of *Vanatta* v. *Morristown,* 34 *N. J. L.* 445. In the matters of taxation, Justice Field of the Supreme Court of the United States, in the case of *Hagar* v. *Reclamation District No. 108,* 111 *U. S.* 701, pointed out the distinction in the following language:

" 'Undoubtedly, where life and liberty are involved, due process requires that there be a regular course of judicial proceedings which imply that the party to be affected shall have notice and an opportunity to be heard; so, also, where title or possession of property is involved. But where the taking of property is in the enforcement of a tax, the proceeding is necessarily less formal, and whether notice to him is at all necessary may depend upon the character of the tax and the manner in which its amount is determinable.  *  *  *

" 'Of the different kinds of taxes which the state may impose, there is a vast number of which from their nature no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes (not dependent upon the extent of his business) and generally specific taxes on things or persons or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element of a judicial nature, and nothing could be changed by hearing the taxpayer. No right of his is therefore invaded. Thus, if the tax on animals be a fixed sum per head, or on articles, a fixed sum per yard or bushel or gallon, there is nothing the owner can do which can affect the amount to be collected from him. So, if a person wishes a license to do business of a particular kind, or at a particular place, such as keeping a hotel or a restaurant, or selling liquors, or cigars, or clothes, he has only to pay the amount required by the law and go into the business. There is no need in such cases for notice or hearing. So, also, if taxes are imposed in the shape of licenses for privileges, such as those on foreign corporations for doing business in the state, or on domestic corporations for franchise, if the parties desire the privilege, they have only to pay the amount required. In such cases there is no necessity for notice or hearing. The amount of the tax would not be changed by it.

" 'But where a tax is levied on property not specifically, but according to its value, to be ascertained by assessors appointed for that purpose upon such evidence as they may obtain, a different principle comes in. The officers in estimating the value act judicially; and in most of the states provision is made for the correction of errors committed by them, through boards of revision or equalization, sitting at designated periods provided by law to hear complaints respecting the justice of the assessments. The law in prescribing the time when such complaints will be heard gives all the notice required, and the proceeding by which the valuation is determined, though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is due process of law.'

"There is a class of subjects within municipal cognizance, with respect to which the courts have imposed a condition to the validity of their official acts that previous notice of their intended action shall be given to the parties affected, where no such requirement is contained in their charters. The cases in which this doctrine has been held proceed on the principle that it is contrary to natural justice that a person should be bound by proceedings of a judicial nature affecting his person or property, without having an opportunity of being heard.

"Ordinances directing the mere repairing and repaving of streets or reconstruction of sewers, which are enjoined upon municipal corporations as matters of duty, are purely ministerial; but ordinances directing a new street to be opened or altered, new sewers to be constructed, or other similar public improvements to be made, by which the property of individuals is taken or affected are, in their nature, judicial. *City of Camden* v. *Mulford,* 26 *N. J. L.* 57.

"An ordinance laying out new streets or directing a sewer to be built is judicial.

"The distinction is between those ordinances which adopt a general system of policy affecting all the inhabitants of the city or town, or all the property situate within corporate limits, directing the execution of mere public duties, the burden of which is borne by all equally, and those which pro-

vide for the making of a particular improvement affecting property in one locality, the cost of which is to be defrayed by certain specific individuals. The passing of ordinances of the first class is within the ordinary legislative functions with which the common council is entrusted as the representative of the people, which they may exercise in their discretion. Those of the latter class are the execution of certain statutory powers over individuals to affect their property, which have been specially conferred upon the common council by the act of incorporation. With respect to the latter class of ordinances, the adoption of an ordinance directing the improvement to be made is a judicial act affecting those individuals, and they are entitled to be heard before the ordinance is passed which adjudges the necessity or expediency of the proposed improvement and directs it to be made.

"The values used in the amended assessment of the prosecutor were the values used in the original assessment. The prosecutor had notice and a hearing upon the fixing of these values. The fixing of the local rates in each taxing district and the determination of the average rate of taxation to be applied to the assessed values of railroad property were ministerial acts, in the ascertainment of which the prosecutor was not entitled to notice and hearing. If the prosecutor was entitled to notice and hearing upon the determination of the average rate of taxation to be applied, it would be equally entitled to a notice and hearing upon the fixing of every local tax rate, as each local tax rate is a factor in making the average rate of taxation. We think the legislature had the power to enact the statute of 1921, and that, in view of the fact that the prosecutor was accorded a hearing with respect to its 1921 taxes upon the only determination involving a judicial act, namely, the fixing of the value of its property for assessment purposes, that the prosecutor was not deprived, by the application of the 1921 average rate of taxation to the assessed value of its property, of the benefits of the fourteenth amendment to the constitution of the United States, and that its property was not taken without due process of law.

"The cases relied upon by the prosecutor in support of its contention that the amended assessment is illegal are all cases in which some judicial act was determined without notice to the taxpayer. Thus, the case of *Schusard* v. *Drake*, 33 *N. J. L.* 194, cited by the prosecutor, was a case in which an appeal had been taken by the township committee to the commissioners of appeal with reference to the amount of the prosecutor's taxes. The notice required to be served on the taxpayer was left with a tenant. The commissioners of appeal increased the taxes which could only be done by increasing the assessment. This was a judicial act and was set aside because the service of the notice was not in accordance with the statute. The cases of *Hoboken Land and Improvement Co.* v. *Anderson*, 38 *N. J. L.* 82, and *Jersey City et al.* v. *The Board of Equalization of Taxes*, 74 *Id.* 753, were both cases in which the assessments were deemed too low and increased, a judicial act.

"The recent cases of *Garrison* v. *Jersey City*, 92 *N. J. L.* 624, and *Director General of Railroads* v. *State Board of Taxes and Assessment*, 93 *Id.* 294, which arose out of the passage of a statute changing the fiscal year of municipalities, are also cited to support the prosecutor's contention. An *ad interim* budget made up by the city of Jersey City for one month, and the fixing of a tax rate to raise the money for that month, so as to start the fiscal year in the manner provided by the new statute, was set aside. This involved the claim of an error in the tax rate. If there were such a claim, this case would present a different question.

"The prosecutor also cites the case of *Scudder* v. *Baker*, 33 *N. J. L.* 424. In this case it was held that after the assessor had performed his duty in making an assessment and passing over the duplicate to the collector, that the provisions of a supplement were inoperative and could not defeat the power to collect the assessment. This decision was based upon the view that the supplement was not intended to do that thing. In delivering the opinion of the Court of Errors and Appeals, Justice Bedle said: 'It can hardly be supposed

that the legislature intended to simply modify the assessment of March 1st, 1866, already made. If such was the case, it would be our duty to carry it out.' The third section of chapter 138 of the laws of 1921; clearly states that the state board is given the power to amend its report of the assessment of taxes for the year 1921, which may theretofore have been certified to the comptroller, or certify a new report. There was, therefore, no question that the law was to apply to 1921 taxes.

"For these reasons, the tax as certified in the amended assessment will be affirmed."

For the appellant, *Collins & Corbin.*

For the respondents, *Thomas F. McCran,* attorney-general, and *William Newcorn,* assistant attorney-general.

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion of the Supreme Court.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, WHITE, HEPPENHEIMER, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 11.

*For reversal*—None.